STATE OF IOWA, Appellee, v. NORVAL MATTHES, Appellant.

No. 39962.

APRIL 14, 1930.

*E. A. Baldwin* and *Frank F. Messer,* for appellant.

*John Fletcher,* Attorney-general, and *F. B. Olsen,* County Attorney, for appellee.

FAVILLE, J.—The evidence tends to show that the appellant rented a small room over a garage belonging to one Chaddick, and that the means of access to said room was through a door from a haymow in the barn belonging to Chaddick, to which the garage was attached. A door leading from the attic of the garage to the adjacent alley was nailed shut from the inside. The evidence tended to show that the appellant placed a padlock upon the door leading into the attic from the haymow. The

officers who were about to search said place caused Chaddick to ask the appellant to come to the place, which he did. The officers took a key from the appellant, which fitted said padlock, and, entering said attic of the garage, found therein more than 30 empty pint bottles, jugs, quart jars, tin cans, and 45 one-gallon tin cans filled with alcohol. A still was also seized by the officers at said time. Chaddick testified that he did not have any key to the padlock.

I. After proper identification, the still referred to was offered in evidence by the State. The appellant's objection thereto was that it was incompetent, immaterial, and irrelevant, and not  tending to prove any of the allegations of the indictment. The objection was general and indefinite. The still was a part of the paraphernalia seized at the time of the search in question. The court did not err in overruling the objection that was interposed to the offer of this exhibit. *State v. Bryant,* 208 Iowa 816; *State v. Burzette,* 208 Iowa 818; *State v. Campbell,* 209 Iowa 519.

II. The court gave the jury the following instruction on reasonable doubt:

"A reasonable doubt is not an imaginary one, or one that is based upon conjecture or speculation, or one that must be sought after, in order to be found; but it is such a doubt as arises of  itself in your minds, without being sought after, either from a consideration of the facts in the evidence before you, or for want of evidence upon a material matter, and causes you involuntarily to hesitate before reaching a conclusion of the defendant's guilt. *If, upon a full and fair consideration of all the evidence before you, or from any lack of evidence upon any material fact, you are abidingly satisfied and convinced that the material matters necessary to establish the guilt of the defendant are true, then you have been convinced beyond a reasonable doubt."*

This instruction is somewhat ambiguous. It cannot be sustained. From the last sentence of said instruction, which we have italicized, the jury may well have understood that if, upon a full and fair consideration of all of the evidence, or *from a lack of evidence upon any material fact,* they were abidingly satisfied

and convinced of the guilt of the appellant, then they were convinced beyond a reasonable doubt. The correct rule is, of course, that if, from a lack of evidence, the jury entertains a reasonable doubt of the guilt of the defendant, they are to *acquit* him; but this is quite a different thing from *convicting* a defendant upon a *lack of evidence upon any material fact*. The jury might readily have construed this instruction to place a burden upon the appellant which the law does not require him to assume.

We have recently had occasion to fully discuss the question of an instruction upon reasonable doubt involving the element of a lack of evidence, in *State v. Anderson*, 209 Iowa 510. The instruction in the instant case, however, does not conform to the rule therein announced with regard to a reasonable doubt which may arise from a lack or want of evidence. The instruction in question would seem to authorize a jury to be convinced beyond a reasonable doubt from a *lack* of evidence upon any material fact. Such cannot be the law, and the instruction as given was not only erroneous, but obviously was prejudicial to the appellant. It was error to give it.

III. Error is predicated upon the giving of Instruction No. 4, which was a copy of Section 1924, Code, 1927, which, in general terms, covers the various forms of the prohibitory liquor  law. Complaint is made that the instruction did not limit the offense to the strict subject of unlawful possession, but included a reference to the various forms of violation which are prohibited by the statute. The objection is without merit. No prejudice could have resulted to the appellant from the giving of the instruction. The indictment and the instruction of the court were limited to one subject-matter, to wit, unlawful possession of intoxicating liquor. *State v. Wareham*, 205 Iowa 604.

IV. Complaint is made because the court gave an instruction defining the term "burden of proof." The court properly instructed the jury that the burden rested upon the State to  prove the appellant's guilt beyond a reasonable doubt. The definition of "burden of proof" might well have been omitted from the instructions, but when the instructions are read in their entirety, there was no prejudice to the appellant by the giving of said instruction.

V.   Complaint is made because, in giving Instruction No. 7, the court said: "The law further provides that courts and juries shall construe the laws in regard to intoxicating liquors  so as to prevent evasion." Such is the provision of the statute. Code Section 1922. This has been the statutory law in this state for nearly 80 years, since the Code of 1851, Section 929. In *Woolheather v. Risley,* 38 Iowa 486 (1874), in an action for damages for injuries from the sale of intoxicating liquor, we said:

"But the statute provides that: 'Courts and juries shall construe this statute so as to prevent evasions' of its provisions, Code Sec. 1554, which changes the common-law rule generally applied to criminal statutes."

In *Cox v. Burnham,* 120 Iowa 43 (1903), we said:

"Statutes designed to regulate the sale of intoxicating liquors are to be construed and interpreted by the rules having application to statutes generally, save as modified by Section 2431 of the Code, which provides that it shall be the duty of courts and jurors to construe the general chapter relating to the subject of intoxicating liquors so as to prevent evasion. The matter of prime importance in any case is to ascertain what was the intent of the legislature. For this purpose, the act itself is to be relied upon, in the first instance. If it be found that the terms are ambiguous, or the meaning obscure, resort may be had to the defects in the law as previously existing, and the evils sought to be remedied. In cases like the one before us, consideration may be given also to that general policy of the state which it may be presumed the legislature had in mind when framing the enactment. *Wheelock v. Madison Co.,* 75 Iowa 147; *Brown v. Lewis,* 76 Iowa 159; *Glass v. Cedar Rapids,* 68 Iowa 207. So, too, statutes *in pari materia* are oftentimes important aids to correct interpretation. *State v. Sherman,* 46 Iowa 415."

In *Wright v. District Court,* 171 Iowa 596 (1915), a contempt case, we said:

"Courts are, by statute, Code Sec. 2431, required to so administer the law for the suppression of the liquor traffic as to

prevent its evasion. This does not require or authorize the court to hold the defendant guilty of contempt without substantial evidence on which to base the finding, but it does emphasize the court's duty to scrutinize the record, and, if an offense is fairly established, to assess the penalty which the statute prescribes.''

In *State v. Snyder*, 185 Iowa 728 (1919), we said:

''The trial court instructed the jury that, under the statute, courts and jurors should construe the statute prohibiting the liquor traffic so as to prevent evasion. This is complained of, the thought being that the construction of statutes is one of law for the court, and not one of fact for the jury. But the statute itself, Code Section 2431, provides that jurors, as well as courts, shall construe the chapter in regard to alleged violations of the liquor law so as to prevent evasion. The jurors would know nothing about this statute, if they were not informed by the court, and we think it was proper for the court to give the instruction in question.''

In *State v. Elliott*, 198 Iowa 71 (1924), we said:

''The only remaining question requiring consideration is the contention that the court committed error in Paragraph 7 of its charge to the jury. The court in this instruction told the jury that it was its duty to fully and fairly consider and weigh the testimony, and to so construe the same as to prevent evasions of the law with reference to the sale of intoxicating liquors. Doubtless the court had in mind the appellant's contention that the scene or location of his business was not a 'place,' within the contemplation of the law. The court did not define 'a building, erection, or place,' but submitted the question to the jury as to whether the business was carried on in a place which violated Section 2384. The giving of this instruction does not constitute reversible error.''

In *State v. Comer*, 198 Iowa 740 (1924), we said:

''Complaint is made of Instruction No. 5, which is as follows: 'You are instructed that the statutes of Iowa provide that courts and jurors shall construe the law with reference to intoxicating liquors so as to prevent evasion; but this statute does not relieve the State from proving beyond a reasonable doubt

every material allegation of the indictment, as by these instructions explained.' This instruction is the law, as found in Code Section 2431, and has been expressly approved by us in *State v. Snyder*, 185 Iowa 728. There was no error at this point."

In *State v. Parsons*, 206 Iowa 390, we said:

"A further assignment of error is predicated on Instruction 9 given by the court, in which the statute (Section 1922, Code of 1924) is substantially quoted, that: 'Courts and jurors shall construe the (liquor) laws of the state so as to prevent evasion.' We discover no reason why this statute should find a place in the instructions of the court in a case involving an alleged violation of the prohibitory liquor law. The jury has nothing to do with construing the law. That is the function of the court. The legislature does have power to prescribe legal definitions of its own language, and it may be conceded that, when a legislative act embodies a definition, it is binding on the courts. However, the legislature has no power to direct the judiciary in the interpretation of existing statutes. *State v. Schlenker*, 112 Iowa 642. While a legislative construction of an act is entitled to due consideration from the courts, it is in no sense binding on the court. *Slutts v. Dana*, 138 Iowa 244. See, also, 36 Cyc. 1143. If a jury could render any obedience to Section 1922, supra, it would have to be on the evidence; and, although the statutory law may prescribe rules of evidence, it is not the function of the legislature to instruct the jury how it shall weigh evidence. We recognize that this statutory provision has frequently found lodgment in the charge given by the trial court in cases involving violation of the liquor law, but this fact does not constitute a justification for the continuance of the use of the challenged instruction. Nor are we unmindful that the instruction given in the instant case was approved by this court in *State v. Comer*, 198 Iowa 740. We would not reverse the instant case on this ground, but we no longer approve, as a matter of practice, the giving of such an instruction."

The pronouncement in the *Parsons* case places us in the same situation that confronted us in the *Anderson* case, supra, wherein we considered an instruction on reasonable doubt that

we had repeatedly "disapproved," and which we had admonished trial courts to desist from using. We said:

"If we do not or cannot approve an instruction, we necessarily disapprove it. When we disapprove or cannot approve an instruction, it is because it is erroneous."

If the instruction in question is "disapproved," "it is because it is erroneous." We therefore should definitely determine whether or not the instruction in question is erroneous. If it is erroneous, the foregoing cases, and especially *State v. Snyder*, *State v. Elliott*, and *State v. Comer*, which in terms have approved such an instruction, should be definitely overruled. If it is not erroneous, the pronouncement in *State v. Parsons* should be overruled, so that there may not be any uncertainty as to whether or not such an instruction should be given.

In *State v. Parsons* we said:

"* * * the legislature has no power to direct the judiciary in the interpretation of existing statutes. *State v. Schlenker*, 112 Iowa 642."

In the cited case of *State v. Schlenker* we considered a statute with reference to the adulteration of milk. The statute said:

" 'For the purpose of this chapter the addition of water or any other substance or thing, to whole milk or skimmed milk or partly skimmed milk, is hereby declared an adulteration,' etc."

We said:

"Section 4990 is said to be void because it invades the judicial province, in that it is not permissible for the legislature to make certain evidence conclusive of a question that may be submitted to judicial determination. No doubt, the legislature cannot indirectly dispose of a cause by prescribing conclusive rules of evidence, and it has no power to direct the judiciary in the interpretation of existing statutes. *Groesbeck v. Seeley*, 13 Mich. 329; *Johns v. State*, 55 Md. 362; *Reiser v. Association*, 39 Pa. St. 137; *Salters v. Tobias*, 3 Paige 338. But it does have power to prescribe legal definitions of its own language, and, when an act passed by it embodies a definition, it is binding on

the courts. *Smith v. State,* 28 Ind. 321; *Jones v. Surprise,* 64 N. H. 243 (9 Atl. Rep. 384); *Byrd v. State,* 57 Miss. 243 (34 Am. Rep. 440); *Herold v. State,* 21 Neb. 50 (31 N. W. Rep. 258); *Clay v. Railroad Co.,* 84 Ga. 345 (10 S. E. Rep. 967); *People v. Board of Supervisors of New York City,* 16 N. Y. 424. Even declaratory statutes are entitled to respectful consideration by the courts, although not always binding. Cooley Statutory Crimes (2d Ed.), Section 91; *People v. Board of Supervisors of New York City,* supra; *Lambertson v. Hogan,* 2 Pa. St. 25. The definition given by the legislature in Section 4990 of the Code as to the term 'adulteration' is valid and binding. Such legislation does not trench on the powers of the judiciary, and is not invalid for the reason suggested.''

Again, in *State v. Parsons,* it is said:

''While a legislative construction of an act is entitled to due consideration from the courts, it is in no sense binding on the court.''

To this statement is cited *Slutts v. Dana,* 138 Iowa 244. That case involves an action to restrain the collection of a tax. A succeeding legislature had passed another statute. We said:

''* * * the appellants urge that the enactment of said chapter clearly shows the legislative construction placed upon the law as it theretofore stood. It is quite likely that the legislature may have thought the power of the board in cases like the present not very clearly defined, and we cheerfully concede as much; but, notwithstanding this, we still think the board had the power, when the bonds were issued, which is expressly conferred by Chapter 16. While a legislative construction of an act is entitled to due consideration from the courts; it is by no means binding; and whenever it appears that the so-called construing act may have been passed simply for the purpose of removing doubt from previous acts, the courts should so consider it. And such was, in our judgment, the purpose of the chapter.''

We have quoted these excerpts to demonstrate that by overruling our pronouncement in the *Parsons* case we do not intend to overrule the cases therein cited. It must be remembered that, in the case at bar, as well as in the *Parsons* case and the *Snyder,*

*Elliott,* and *Comer* cases, we were considering only an instruction to a jury. No question whatever of an attempt by the legislature to interfere with the constitutional powers of the courts was involved. We are not concerned at this point with the question of how far, if at all, the legislature may bind the courts in the construction of statutes. We simply have a case where the court told the jury that it was their duty to construe the law so as to prevent evasion.

In the *Parsons* case (Abstract, page 31), the instruction was as follows:

"Still another statute of the state provides that courts and jurors shall construe the laws of the state so as to prevent evasion; but this statute does not relieve the State from proving beyond a reasonable doubt every material allegation of the indictment, as by these instructions explained."

This is almost identical with the instructions in the *Comer* case and the *Elliott* case.

Even without any such statute, the instruction would not have been erroneous.

The criminal case is a rare one indeed where some such admonition is not given to the jury, no matter what crime is charged. Juries in criminal cases are nearly always told to "do their duty fearlessly," "without regard to consequences to the defendant," "without sympathy," "with a deep sense of responsibility," "without evasion," etc., etc. Such admonitions are not only not erroneous, but have been recognized for centuries as proper in the administration of the criminal law. The instruction under consideration does no more than this, and the statute does no more than declare what has always been the law, and specifically apply it to prosecutions for violation of the laws pertaining to intoxicating liquor. This instruction has nothing whatever to do with the question of an alleged attempt by the legislature to interfere with the constitutional prerogatives of the courts. The only question is whether or not the court erred in giving the instruction in question to the jury.

Code Section 64 is as follows:

"The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to this

Code. Its provisions and all proceedings under it shall be liberally construed with a view to promote its objects and assist the parties in obtaining justice.''

Would we hold that it was reversible error for a court to instruct a jury that this was the law in this state? Certainly not. Does this statute ''infringe upon the constitutional prerogatives of the courts?'' Like the statute in question, it has stood without successful attack for some 80 years.

Code Section 63 provides:

''In the construction of the statutes, the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the general assembly, or repugnant to the context of the statute:''

This is followed by twenty-six paragraphs, definitely stating how certain statutes, words, and phrases shall be ''construed.'' Is this statute void because ''not binding on the courts?'' If so, we have been in error some dozens of times in applying it.

The statute on attachments (Code Section 12143) provides that ''this chapter shall be liberally construed;'' and we have followed it ever since the Civil War, without any apprehension that the ''constitutional prerogatives of the courts'' were being interfered with thereby. Would we reverse a suit in attachment if the court should instruct the jury that ''the law provides that the law with regard to attachments shall be liberally construed?'' Would it be error to tell a jury, in a proper case, that the exemption laws are liberally construed? We have never held such instructions to be erroneous.

In *Churchill v. Pacific Imp. Co.*, 96 Cal. 490 (31 Pac. 560), a statute provided:

''* * * that the sections of the Code, 'so far as they are substantially the same as existing statutes or the common law, must be construed as continuations thereof, and not as new enactments.' ''

The court said:

''As there used, the legislature clearly intended it [construed] to mean 'regarded,' or 'considered.' ''

That is all the instruction under consideration meant in this case,—that the jury should regard or consider the case so as to prevent evasion of the law. Regardless of the statute, such an instruction would have been proper.

Code Section 14010 provides, in respect to criminal appeals, that:

"If the appeal is taken by the defendant, the Supreme Court must examine the record, without regard to technical errors or defects which do not affect the substantial rights of the parties, and render such judgment on the record as the law demands."

We have applied this section in a very large number of cases, and have never held that it was a legislative interference with the prerogatives of the court.

The pronouncement in the case of *State v. Parsons* on the question discussed in this division of this opinion is overruled.

VI. The court gave the jury the following Instruction No. 10:

"So you are instructed that, if the State has satisfied you beyond a reasonable doubt that the said Norval Matthes, on or about the 10th day of December, 1928, in Johnson County, Iowa,  did willfully and unlawfully, by himself and for himself, have possession of intoxicating liquors, then and there contrary to the statute of Iowa, and with intent to violate the laws of the state of Iowa, then you will convict; but if you fail to so find, then you will acquit him."

Thereafter, the jurors appeared before the court and requested further instructions with regard to said Instruction No. 10; whereupon the court expressly withdrew said Instruction No. 10, and gave in lieu thereof the following two instructions:

"(13) You are instructed that, if the State has established beyond a reasonable doubt that the said Norval Matthes, on or about the 10th day of December, 1928, in Johnson County, Iowa, did willfully and unlawfully have in his possession intoxicating liquors, then and there contrary to the statutes of Iowa, then you will convict him; but if you fail to so find, then you will acquit him.

"(14) You are further instructed that, if you find that the building or place where the liquor in question was found, was in the possession of or under the control of the defendant, Norval Matthes, then, in law, said liquor would be in the possession of said defendant; but if you do not so find, then you will find for the defendant."

Error is predicated upon the giving of said instructions. The court expressly instructed the jury that:

"In considering any one instruction, you should consider it and construe it in the light of and in harmony with all other instructions given, and apply them as a whole to the evidence in the case."

When this is done, there was no error in the giving of said instructions.

Code Section 1924 makes "possession of any intoxicating liquor," except as provided by statute, illegal.

Instructions 13 and 14 must be construed together. It would have been quite proper for the court to have embodied them both in one instruction. Had it done so, the jury would have understood that the State must establish beyond a reasonable doubt that the appellant did willfully and unlawfully have in his possession intoxicating liquor, then and there contrary to the statute, and that, if they found that the building or place where the liquor in question was found, was in the possession of or under the control of the appellant, then, in law, such liquor would be in the possession, of the appellant. The evidence tended to show that the appellant occupied and used the attic of the garage in which the liquor was found; that the only means of access to said attic was by means of a door which was locked; and that appellant had the only key to such lock. The evidence was sufficient to sustain a finding by the jury that the appellant had possession of said liquor and exercised dominion and control over it.

It is argued by the appellant that a party might have possession of premises whereon liquor had been placed by some other person, and would, in such event, in law be in possession

 of said liquor, and that this might happen under circumstances by which the party charged would have no notice or knowledge whatever that the liquor was on his premises. The argument is made that one by stealth might place liquor upon a farm or in a building or in a room occupied by another, and, while the latter would have possession of the premises, he could not be held liable for possession of the liquor without knowledge thereof.

In *State v. Harris*, 106 Ore. 211 (211 Pac. 944), the Supreme Court of Oregon, under a similar situation, said:

"The statute, Section 2224-4, Or. L., provides that 'it shall be unlawful for any person to receive, import, possess, transport, deliver, manufacture, sell, give away or barter any intoxicating liquor within this state,' etc. In the case of *State v. Cox*, supra [91 Ore. 518 (179 Pac. 575)], this court, in construing this statute, in effect held that it was to be read as if the word 'knowingly' had been written into the statute, and that, before the defendant could be convicted for a violation of the statute, it was necessary that a criminal intent should be established. From this it follows that, before a person can be convicted of being unlawfully in possession of intoxicating liquor, it is necessary that his possession should be a conscious possession, and not merely such possession as would arise from having intoxicating liquor placed in his pocket or within his house or upon his premises without his knowledge. * * * But it is not necessary for the State to establish defendant's conscious possession of intoxicating liquor by direct testimony. This may be established by circumstantial evidence, and if the facts or circumstances in the case are such that it is reasonable to infer that the defendant did have such conscious possession, this would be sufficient to sustain his conviction."

So, in the case at bar, when the instructions are read together, as they must be, the jury was expressly told that the State must establish beyond a reasonable doubt that the appellant "did *willfully* and unlawfully have in his possession intoxicating liquors, then and there contrary to the statutes of the state of Iowa." One cannot act *willfully* and still be in utter ignorance of the act. The instruction did not tell the

jury that the mere constructive possession of intoxicating liquor, because found on premises owned or occupied by a party, would constitute a violation of the law, but the court made it clear that such possession must be *willful* and unlawful, before a conviction would lie.

The instructions complained of could have been more happily framed, to express the rules of law in the mind of the court. If the instructions were erroneous at this point, it was error of which the appellant cannot complain.

As bearing on the question, see *State v. Butler,* 186 Iowa 1247; *State v. Fountain,* 183 Iowa 1159; *Bowers v. Maas,* 154 Iowa 640; *State v. Kichinko,* 122 Wash. 251 (210 Pac. 364). See, also, article in Iowa Law Review, Vol. 15, No. 2, February 1930, page 209.

We hold at this point that the instructions complained of were not prejudicial to the appellant.

For the error pointed out, the judgment must be, and it is, —*Reversed.*

MORLING, C. J., and EVANS, STEVENS, KINDIG, and WAGNER, JJ., concur.

DE GRAFF, J., dissents.

DE GRAFF, J. (dissenting).—The general assembly of Iowa, in my judgment, has no constitutional authority to legislate how this court or any court of Iowa shall construe a statute or direct a jury how to construe a statute, as the jury is a fact-finding body, and acts under the law given by the trial court in the instructions of the court in any case.